## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

—————————————————————————————

ROGER J. HALL

*Plaintiff,*

-against-

BED BATH & BEYOND INC., BED BATH & BEYOND PROCUREMENT CO. INC., FARLEY S. NACHEMIN, and WEST POINT HOME, INC.

*Defendants.*

—————————————————————————————

Civil Action No. 10-Civ-4391 (AKH)

**PLAINTIFF'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT, UNFAIR COMPETITION AND MISAPPROPRIATION**

Plaintiff Roger J. Hall ("**Plaintiff**"), by and through their undersigned counsel Shelowitz & Associates, PLLC, by way of Amended Complaint against Defendants Bed Bath & Beyond Inc., Bed Bath & Beyond Procurement Co. Inc. (collectively "**Bed Bath & Beyond**"), Farley S. Nachemin, and West Point Home, Inc. ("**West Point Home**") (collectively "**Defendants**"), respectfully alleges and submits as follows pursuant to Rule 3 and Rule 15(a)(1) of the Federal Rules of Civil Procedure:

### THE PARTIES

1.      Plaintiff Roger J. Hall ("**Hall**") is an individual residing in New Jersey.

2.      Upon information and belief, Defendant Bed Bath & Beyond Inc. is a New York registered corporation with a principal executive office at 650 Liberty Avenue, Union NJ 07083.

3.      Upon information and belief, Defendant Bed Bath & Beyond Procurement Co. Inc. is a New York registered corporation with a principal executive office at 110 Bi-County Boulevard, Farmingdale, NY.

4.     Upon information and belief, Defendant Farley S. Nachemin ("**Farley**") is an individual residing in Babylon, NY, and is the Vice President and General Merchandise Manager of bath and seasonal at Bed Bath & Beyond.

5.     Upon information and belief, West Point Home is a Delaware corporation with a principal place of business at 28 East 28th Street, New York, NY 10016.

## NATURE OF THE ACTION

6.     This is a civil action against Defendants for the infringement of the United States Design Patent No.: US D596,439 S (the "**Patent**") (attached hereto as **Exhibit A**) arising under the laws of the United States set forth in Title 35 of the U.S. Code, unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), unfair Competition under NY GBL § 349, and misappropriation under New York common law.

## JURISDICTION AND VENUE

7.     The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b).

8.     This Court has supplemental jurisdiction over Plaintiff's New York state law claims pursuant to 28 U.S.C. § 1376.

9.     This Court has personal jurisdiction over Defendant Bed Bath & Beyond as it is a New York registered corporation.

10.     This Court has personal jurisdiction over Defendant West Point Home as its headquarters are located in New York City.

11.     This Court has personal jurisdiction against Farley as he resides in New York, or in the alternative, pursuant to New York CPLR § 302.

12.     Venue in the Southern District of New York is proper pursuant to 28 U.S.C. §§ 1391(b)(2) or (3) and 1400(b).

## STATEMENT OF FACTS

### The Patent

13.     Hall is the inventor of the "**Tote Towel**" -- a rectangular cotton towel sized 45" x 11" containing zipper pockets and a hanging loop, intended for exercise, sports, and indoor and outdoor use.  The Tote Towel is manufactured in the U.S.A. and is packaged in clear plastic zip packaging with a 6" x 7" green, black, and purple label featuring, among other items, its name, photo of the unfolded Tote Towel, and photo of two (2) individuals with Tote Towels draped over their necks. *See* **Exhibit B** hereto.

14.     Hall -- a retired inventor with numerous years of experience in the textile and sales industries -- first came up with an idea for the Tote Towel on or about December 7, 2007 and by about August 8, 2008, completed his design and drawing plan for the Tote Towel.

15.     Hall retained a patent attorney to obtain the Patent on or about August 21, 2008, who filed an application with the United States Patent and Trademark Office (the "**PTO**") on or about October 30, 2008.

16.     Hall obtained the Patent for the Tote Towel on July 21, 2009, which covers "[t]he ornamental design for a towel tote, as shown and described." *See* **Exhibit A**.  The Patent contains nine (9) figures or drawings of the Tote Towel highlighting its unique features such as its shape, the zipper pockets, and the hanging loop.

### The Meetings With Bed Bath & Beyond

17.     Hall first contacted Farley of Bed Bath & Beyond on or about March 20, 2009 to discuss the potential for collaboration with respect to the Tote Towel.  Farley showed an interest

in the product and referred Hall to Christine Gitli ("**Gitli**"), the Buyer of towels, bath, rugs, robes, and footwear at Bed Bath & Beyond.

*April 7, 2009 Meeting*

18.     A meeting was scheduled by Jennifer Zadoff ("**Zadoff**"), the Associate Buyer of bath and rugs at Bed Bath & Beyond for April 7, 2009 in Bed Bath & Beyond's offices in Farmingdale, NY.

19.     At the April 7, 2009 meeting, Hall met with Zadoff's assistant -- Laura.  Hall explained to Laura the basic concept of the Tote Towel and left an information card and a sample of the Tote Towel with Laura to be reviewed by her superiors.  The information card for the Tote Towel clearly displayed the statement "patent pending."

*April 22, 2009 Meeting*

20.     Following Hall's April 7, 2009 meeting with Laura, another appointment was scheduled for April 22, 2009 for a meeting with the decision-makers.

21.     Farley, Zadoff, and Gitli were all present at the April 22, 2009 meeting, during which, Hall presented and described the Tote Towel.

22.     Hall also mentioned his merchandising concept for Bed Bath & Beyond, but before Hall could quote any prices, Gitli remarked that Bed Bath & Beyond had a vendor -- West Point Home -- that could manufacture the Tote Towel cheaper in Pakistan.

23.     Hall emphasized that the Tote Towel is made in the U.S. and that he had a patent pending on the product, and warned Bed Bath & Beyond that they were prohibited from showing West Point Home the sample product and information card he provided to Laura at the April 7, 2009 meeting.

24.     Throughout April, 2009, Hall corresponded with Gitli and Farley regarding Bed Bath & Beyond potentially carrying Hall's Tote Towel's in its stores.  Hall repeatedly confirmed that he had a patent pending on the Tote Towel. *See e.g.* April 20, 2009 email from Hall to Farley, attached hereto as **Exhibit C**.

25.     Bed Bath & Beyond declined to carry the Tote Towel.  Hall obtained the Patent on the Tote Towel on July 21, 2009.

## Bed Bath & Beyond's Infringement

26.     Nearly a year after the Bed Bath & Beyond meeting, Hall received a call from one of his customers commenting that she had seen Hall's towel on sale in Bed Bath & Beyond for nearly half his price.  Upon receiving these alarming news, on or about April 11, 2010, Hall visited a Bed Bath & Beyond store in Sarasota, Florida.  Hall saw that a knock-off of the Tote Towel was being sold by Bed Bath & Beyond for $9.99 (the "**Counterfeit Towel**").

27.     The Counterfeit Towel is virtually identical in design to the Tote Towel.  It the same shape and almost the same dimensions -- 50" x 9".  The Counterfeit Towel also features the Tote Towel's unique zippered compartments and hanging loop.  In fact, the inseam of the Counterfeit Towel, from one pocket to the other, is exactly the same length as that of the Tote Towel.

28.     The Counterfeit Towel's label -- also black and green -- states: "Workout Towel" "drapes around your neck," "convenient zippered pockets."  The label also features a drawing of a person wearing what looks like the parties' towels draped around his neck in a similar manner as on Plaintiff's Tote Towel label.

29.     The inside tag of the Counterfeit Towel states: "WestPoint Home, Inc. New York, NY" "Made in Pakistan."

30.     The Store Manager of the Saratoga, FL Bed Bath & Beyond store informed Hall that the Counterfeit Towel was placed on the sales floor on or about March 10, 2010.

31.     Upon information and belief, Bed Bath & Beyond willfully infringed on Hall's Patent, and Farley induced, contributed, and assisted in Bed Bath & Beyond's infringement by stealing Hall's patented design of the Tote Towel and illicitly providing Hall's sample of the Tote Towel and information provided by Hall on his product to Bed Bath & Beyond's manufacturer, West Point Home for illegal reproduction in Pakistan of Counterfeit Towels that are inferior in quality.

32.     Upon information and belief, Bed Bath & Beyond and Farley have further willfully infringed and continue to willfully infringe on Plaintiff's Patent by selling the second-grade Counterfeit Towels illegally produced by West Point Home in Bed Bath & Beyond stores nationwide, for a discounted price, and unlawfully deriving profits thereby.

33.     Upon information and belief, Farley actively induced Bed Bath & Beyond's infringement, was fully aware, though e-mail exchanges and conversations with Plaintiff, that Plaintiff's designs were covered by a patent, and possessed specific intent to infringe on Plaintiff's Patent to benefit from the sales of the Counterfeit Towels.   As such, Farley is personally culpable for Bed Bath & Beyond's infringement.

34.     Bed Bath & Beyond and Farley have disregarded Plaintiff's rights under the U.S. Patent Act by misappropriating the Tote Towel and having Bed Bath & Beyond's vendor make a cheap replica of the Hall's patented product, and engaged and continue engage in unfair competition and misappropriation by carrying the Counterfeit Towels in its stores for nearly half the Plaintiff's price for the Tote Towel.

## **West Point Home's Infringement**

35.     On April 20, 2010, Hall visited West Point Home's showroom in New York City and met with Stephen Peters, West Point Home's VP of Sales ("**Peters**").

36.     Peters confirmed that West Point Home is the manufacturer of the Counterfeit Towels in its facility in Pakistan.  Peters also informed Hall that the Counterfeit Towels were placed in all Bed Bath & Beyond stored nationwide, that West Point Home also sells Counterfeit Towels to other stores, as well as to the U.S. military, and that they have an inventory of the Counterfeit Towels in North Carolina.

37.     Peters' assistant presented Hall with a sample of the Counterfeit Towel which was identical to the product being sold at the Bed Bath & Beyond stores.

38.     Upon information and belief, West Point Home has willfully infringed on Plaintiff's Patent by unlawfully using Hall's Tote Towel and information provided to Bed Bath & Beyond and creating and cheaply reproducing a knock-off product in Pakistan thereby undercutting the production cost and price of the Counterfeit Towels.

39.     Hall's information card for the Tote Towel which, upon information and belief, was provided by Bed Bath & Beyond to West Point Home, stated "Patent Pending," and as such, the infringement by West Point Home was knowing and willful.

40.     Upon information and belief, West Point Home has further willfully infringed and continues to willfully infringe on Plaintiff's Patent by its massive production of the Counterfeit Towels and illegal re-sale of these infringing products to Bed Bath & Beyond, Linens 'n Things, other stores, and the military, as confirmed by Peters.

**Damages**

41.     As a direct and proximate result of Defendants' willful infringement of Hall's Patent, Plaintiff has been gravely damaged.

42.     Plaintiff has been deprived of profits Defendants have illicitly earned by depriving Plaintiff of the first-to market advantage, willfully copying Hall's invention knowing it was patented, reproducing a substandard replica of the Tote Towel, and mass-selling the Counterfeit Towels nationwide.

43.     Due to Defendants' infringement and misappropriation of Plaintiff's patented designs, Defendants have maliciously undercut Plaintiff's suggested retail price of $19.99 for the Tote Towel by nearly half – by reselling at an actual retail price of $9.99 -- making it virtually impossible for Plaintiff to recoup his expenses incurred in the development, manufacture in the United States, and sale and distribution of the Tote Towels over Defendants' low priced counterfeits.

44.     Plaintiff has also been damaged in terms of royalties he would have received from Bed Bath & Beyond had Bed Bath & Beyond sold the original Tote Towels in its stores, as opposed to misappropriating Plaintiff's product to create a cheaper replica.

45.     Because of the extent of the imitation of the Tote Towel by Defendants, including its patented design features such as the shape, zippered pockets, and hanging loop, consumers have expressed product confusion and have drawn a false association between Plaintiff's product and the inferior Counterfeit Towels, thereby damaging Plaintiff's reputation.

46.     In fact, one key feature of the Tote Towel is that it is manufactured in the U.S., whereas due to the consumer confusion created by Defendants' willful infringement, it is likely

that consumers may be misconceived into believing that Plaintiff's products are being manufactured in Pakistan.

47.     Additionally, due to the Defendants' wide-scale infringing activities, consumers have developed a further misconception that the Counterfeit Towel is the original product containing the unique design features Hall invented and patented.

48.     Plaintiff's damages are substantial and continuing as Defendants continue to illegally manufacture and sell the Counterfeit Towels.  Because of West Point Home's expansion of sales of the Counterfeit Towel to stores and outlets in addition Bed Bath & Beyond, as well as to Linens 'n Things and the U.S. military, there is an imminent threat of severe and irreparable harm to Plaintiff.

**COUNT I**
**Patent Infringement**

49.     Plaintiff incorporates herein his allegations set forth in Paragraphs 1 through 48 above.

50.     The Patent was duly and legally issued to Hall by the PTO.  A true and correct copy of the Patent is attached hereto as **Exhibit A**.

51.     All rights, title, and interest in and to the Patent are vested in the Plaintiff.

52.     Upon information and belief, Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the claims of the Patent by: (i) making, using, importing, selling, and offering for sale in New York and nationwide, the Counterfeit Towels which embody the subject matter claimed in the Patent; (ii) inducing others to infringe the Patent, and/or (iii) committing acts which constitute contributory infringement.

53.     Defendants' infringing activities violate 35 U.S.C. § 271.

54. Upon information and belief, Defendants were fully aware of the existence of the Patent and yet deliberately copied and continue to deliberately copy and misappropriate the subject matter claimed in the Patent. *See e.g*. **Exhibit C**. Upon information and belief, Defendants have therefore knowingly and willfully infringed and contributed to the infringement of the Patent.

55. Defendants' infringement has damaged and will continue to cause grave injury to Plaintiff, and as such Plaintiff is entitled to damages pursuant to 35 U.S.C. § 284.

56. In addition, Plaintiff has no adequate remedy at law against Defendants' continuing acts of infringement. Defendants' infringement of the Patent will continue unless and until enjoined by this Court, causing Plaintiff severe irreparable harm.

57. Plaintiff is therefore entitled to an injunction under 35 U.S.C. § 283 against Defendants preliminarily and permanently enjoining and restraining Defendants from infringing Plaintiff's Patent, and from making, manufacturing, developing, producing, supplying, selling, distributing, importing, exporting, advertising, and offering for sale the Counterfeit Towels or any other product which incorporates any of Plaintiff's designs protected by the Patent.

58. This is an exceptional case that falls within the provisions of 35 U.S.C. § 285, and accordingly Plaintiff is entitled to an award of reasonable attorney's fees.

## COUNT II
### Unfair Competition under the Lanham Act

59. Plaintiff incorporates herein the allegations set forth in Paragraphs 1 through 58 above.

60.     Defendants have misappropriated the Plaintiff's patented designs and have sold and continue to sell the Counterfeit Towels in commerce nationwide, deceiving consumers into believing that Defendants are the innovators of Hall's design for the Tote Towel.

61.     The packaging of the Counterfeit Towel states: "Workout Towel," "drapes around your neck," "convenient zipper pockets."  The back of the packaging label of the Counterfeit Towel features a drawing of a person wearing what looks like the Tote Towel or Counterfeit Towel around his neck in a similar fashion as on the label of the Tote Towel, and again states "drape sport towel around your neck." *See* **Exhibit B**.

62.     Defendants' use of these words, terms, and devices are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association between the Tote Towel and the Counterfeit Towel.

63.     The packaging of the Counterfeit Towel also states "performance that lasts the useful lifetime of the towel." *See* **Exhibit B**.  Defendants' use of these terms and words on its label and in commercial advertising and promotion misrepresents the nature, characteristics, and qualities of the Counterfeit Towel which is of extremely poor quality and falls apart only after several washes.

64.     Defendants' attempts to claim Hall's innovations and sell inferior, cheaper products, promising lifetime use, amount to unfair competition and misappropriation under The Lanham Act, 15 U.S.C. § 1125(a), which has caused and continues to cause serious injury to Plaintiff.

65.     Due to the foregoing, Plaintiff is entitled to damages against Defendants pursuant to 15 U.S.C. § 1117(a), including without limitation Defendant's profits from sales of the

Counterfeit Towels, any damages sustained by Plaintiff, treble damages, Plaintiff's costs and attorney's fees in connection with this action.

66.     Plaintiff is also entitled to an injunction under 15 U.S.C. § 1116 to prevent Defendants' further violations of 15 U.S.C. § 1125(a).

**COUNT III**
**Unfair Competition under the NY General Business Law**

67.     Plaintiff incorporates herein the allegations set forth in Paragraphs 1 through 66 above.

68.     Defendants' actions in knowingly and willfully producing, importing, and selling the Counterfeit Towels which are a cheap knock-off of Plaintiff's product, amounts to a deceptive business practice which has misled and continues to mislead consumers.  Consumers and the public have, as a result, been harmed by Defendants' misrepresentations and misappropriation.

69.     Defendants' willful misappropriation of Plaintiff's product, ideas, and design, while earning illicit profits though unauthorized sales of the Counterfeit Towels amounts to unfair competition under the NY GBL § 349(a).

70.     As a direct and proximate result of Defendants' unfair competition, Plaintiff has been severely damaged and is entitled to in injunction against Defendants' unlawful practice, Plaintiff's actual damages, and treble damages, and reasonable attorney's fees under NY GBL § 349(h).

**COUNT IV**
**Misappropriation**

71.     Plaintiff incorporates herein the allegations set forth in Paragraphs 1 through 70 above.

72.     Upon information and belief, Defendants have misappropriated Hall's labors, skills, efforts, invention, and good will in connection with the Tote Towel by stealing his patented design features and creating knock-off replicas of the Tote Towel.

73.     Upon information and belief, by unlawfully copying Hall's designs, mass-producing the Counterfeit Towels, and selling them to consumers, Defendants have in bad faith exploited a commercial advantage which belongs exclusively to Plaintiff.

74.     As a direct and proximate result of Defendants' misappropriation, Plaintiff has been severely damaged and is entitled to damages in the amount to be determined at trial and punitive damages against Defendants.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff respectfully demands the entry of judgment against the Defendants, jointly and severally, as follows:

A.  An Order declaring that Defendants have infringed and/or induced or contributed to the infringement of U.S. Patent No.: D596,439 S; and

B.  A permanent and preliminary injunction against Defendants enjoining and restraining Defendants from infringing Plaintiff's Patent, and from making, manufacturing, developing, producing, supplying, selling, distributing, importing, exporting, advertising, using, and offering for sale any product which incorporates any of Plaintiff's designs protected by the Patent, including without limitation the Counterfeit Towels; and/or

C.  An award of damages against Defendants adequate to compensate Plaintiff for Defendants' infringement of the Patent pursuant to 35 U.S.C. § 284 and treble damages pursuant to 35 U.S.C. § 284; and/or

D.  Disgorgement of all profits made by Defendants from sales of the Counterfeit Towels; and/or

E. An award of damages to Plaintiff in an amount determined at trial for Defendants' unfair competition under the Lanham Act and treble damages pursuant to 15 U.S.C. § 1117(a)(3); and/or

F. An award of damages to Plaintiff in an amount determined at trial for Defendants' unfair competition under the NY General Business Law and treble damages under NY GBL § 349(h); and/or

G. An award of damages to Plaintiff in an amount determined at trial for Defendants' misappropriation; and

H. Punitive damages against Defendants.

I. A declaration that this case is exceptional pursuant to 35 U.S.C. § 285; and

J. An award of all costs, expenses, disbursements, and attorney's fees incurred by the Plaintiff in this action; and

K. An award of Plaintiff's pre-judgment and post-judgment interest; and/or

L. An award of any other or further relief as the Court deems just and proper.


Dated: New York, New York
July 22, 2010


SHELOWITZ & ASSOCIATES PLLC

*/s/ Mitchell Shelowitz*

By: Mitchell C. Shelowitz (MS 3912)
Darya Dominova (DD 3407)
*Attorneys for Plaintiff*
450 Seventh Avenue, 6th Floor
New York, NY 10123
Tel.: (212) 937-9785
Fax: (646) 328-4569
Email: mshelowitz@salaws.com

# EXHIBIT
# A


US00D596439S

(12) **United States Design Patent**   (10) Patent No.: **US D596,439 S**

Hall   (45) Date of Patent: ** **Jul. 21, 2009**

(54) **TOWEL TOTE**

(76) Inventor: **Roger Hall**, 66 Smith Rd., Denville, NJ
(US) 07834

(**) Term: **14 Years**

(21) Appl. No.: **29/327,966**

(22) Filed: **Nov. 17, 2008**

(51) **LOC (9) Cl.** ................................................. **06-09**

(52) **U.S. Cl.** ......................... **D6/608**; D6/596

(58) **Field of Classification Search** ................. D6/595,
D6/596, 599, 601, 604, 608; 5/630, 631,
5/633, 636, 637, 640, 652, 653, 654, 655,
5/655.3, 417–420; 15/208, 209.1
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D242,490 | S | * | 11/1976 | Belkin | D6/602 |
| D308,454 | S | * | 6/1990 | Merli | D6/596 |
| 5,265,292 | A | * | 11/1993 | Underell | 5/419 |
| 5,443,880 | A | * | 8/1995 | Wike | 428/78 |
| D382,756 | S | * | 8/1997 | Ryan | D6/608 |
| 5,720,057 | A | * | 2/1998 | Duncan | 5/420 |
| D428,751 | S | * | 8/2000 | Edwards et al. | D6/608 |
| D539,069 | S | * | 3/2007 | Hamburg | D6/608 |
| D591,548 | S | * | 5/2009 | LaFratta | D6/608 |

* cited by examiner

Primary Examiner—Janice E Seeger
(74) Attorney, Agent, or Firm—Thomas L. Adams

(57) **CLAIM**

The ornamental design for a towel tote, as shown and
described.

**DESCRIPTION**

FIG. 1 is a perspective view of a towel tote showing my new
design;

FIG. 2 is a front elevational view thereof;

FIG. 3 is a rear elevational view thereof;

FIG. 4 is a right elevational view thereof, the left elevational
view being a mirror image thereof;

FIG. 5 is a top plan view thereof;

FIG. 6 is bottom view thereof;

FIG. 7 is a perspective view of a second embodiment of a
towel tote showing my new design;

FIG. 8 is a top plan view thereof; and,

FIG. 9 is a bottom view thereof; the front elevational view,
rear elevational view, right elevational view (left elevational
view being a mirror image thereof) are as shown in FIGS. 2,
3 and 4, respectively.

1 Claim, 5 Drawing Sheets







FIG. 1



FIG. 2

FIG. 3

FIG. 4



FIG. 5

FIG. 6



FIG. 7



FIG. 8

FIG. 9

# EXHIBIT
# B

# tote towel ™ .us



*For Indoor & Outdoor Exercise and Sports*

**Two** LARGE 7" ZIPPER POCKETS
SECURELY HOLDS BELONGINGS

**CELL PHONE · MONEY · KEYS · I-POD · MUCH MORE**

 100% Ring Spun Cotton Loops
Super Absorbent and Fast Drying

Towel Size 45" x 11"
PATENT PENDING

Only USA Suppliers are used in manufacturing the **TOTE TOWEL** .us        MADE IN USA

---

*Health Hints*   "SMILE"  |  "Own the Day"  |  "Just Do Something"

Take your **TOTE TOWEL** .us

Walk or Run for 10 min.then gradually build up to 30 min.  |  Workout or Exercise with Friends
Join a Health or Exercise Club  |  Exercise at least 3 times a week for 30 minutes
A hike in the park or woods can boost your immunity  |  Take the stairs instead of the elevator
Return your shopping cart  |  Never skip breakfast  |  Eat fruits and vegetables  |  Drink 32oz. of water daily

---

*"DON'T THROW IN THE TOWEL, JUST DO SOMETHING"*



WALKING . RUNNING . CYCLING . GOLF . AEROBICS
PILATES . TENNIS . SOCCER . WEIGHT LIFTING . BASKETBALL
FOOTBALL . VOLLEYBALL . SWIMMING . CAMPING . KICK BOXING

*The Tote Towel is for all Active & Traveling People*
...
*Tote Towel Tune Ups & Exercises On inside*

 **TOTE TOWEL** .us  |  BY R.J. HALL ASSOCIATES, INC.  |  66 SMITH RD., DENVILLE, NJ 07834



WORKOUT
TOWEL
drapes around your neck
convenient zippered pockets

Bed Bath & Beyond

**stay fresh**™
cleaner, fresher, longer

**stay bright**®
colorfast &
fade resistant
...ch friendly

## WORKOUT TOWEL
9 x 50 in.



- **stay fresh**™ built-in anti-microbial protection keeps your towel feeling & smelling fresh. extends the clean, fresh feeling by eliminating odor causing bacteria

- performance that lasts the useful lifetime of the towel

- soft and natural to the touch

- **stay bright**® technology remains colorfast & fade resistant

- bleach friendly

- drape sport towel around your neck

- zippered pockets on both ends conveniently holds your keys and mp3 players

WEST POINT
H O M E

WestPoint Home, Inc. New York, NY 10016  www.westpointhome.com
Stay Bright® is a registered trademark of WestPoint Home, Inc.



WORKOUT TOWEL
9 IN X 50 IN OPTICAL WHITE
GD171 SW05
072709

0 79465 80793 6

# EXHIBIT
# C

Farley,

I received your phone message and email from last week.    Thank you for taking the time out of your busy days to offer your insight.   (Your schedule sounds like mine).

I heard from your return phone call that my voice message was long and all over the place. To help provide a more concise message, I offer the following summary.

- My product is 100% manufactured in the USA from my factories.
- The "Tote Towel" is covered by my patent.

- The conversation I desire with Bed, Bath & Beyond extends beyond product distinctions and factories to encompass price, merchandising & POP.   My concept of the three components of retail contemplate; 1) newness, 2) excitement and 3) price; and a comprehensive strategy on how that translates to your store environments to maximize the customer experience and the sales.

Wouldn't it be great to see all of this while also being able to say "MADE IN AMERICA"?

A decade ago, Textile manufacturing in the United States was practically extinct with companies sourcing from low-cost countries.   The current economic down turn, has sparked the realization that time products spend traveling in containers is time lost from being on the shelves available for sale.   The deepening US recession is producing shuttered storefronts, fewer shoppers and erosion of profit margins with price reductions upwards of 80%.   There are bright spots where individual companies are holding their own and growing such as Bed Bath & Beyond.

I recognize companies must adopt new and emerging strategies to survive and prosper in the changing economic landscape.   These strategies must streamline every inch of the supply chain operations.   I believe my ideas around the combination of product, factory location and merchandising strategy specific to retail stores could offer provocative, fresh and productive insights.

I am scheduled to meet with Christian this Wednesday, April 22, 2009, at 2:30 PM; specific to my product, the "Tote Towel" to compare apples with apples to similar offerings as well as to convey the broader strategy.   In the event you are in the office and available, it would be great to say hello and chat for 5 minutes.

Sincerely,

Roger J Hall