IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROGER J. HALL<br><br>              Plaintiff,<br><br>v.<br><br>BED BATH & BEYOND INC., et al.<br>              Defendants.<br><br>and<br><br>WESTPOINT HOME, INC.<br>              Counterclaimant,<br><br>v.<br><br>ROGER J. HALL<br>              Counterclaim-<br>              Defendant. | Case No. 1:10-CV004391<br><br>Judge Alvin K. Hellerstein |

### WESTPOINT HOME, INC.'S COUNTERCLAIMS

Defendant WestPoint Home, Inc. ("WPH"), by and through its attorneys, bring these counterclaims for false advertising and false patent marking against plaintiff Roger J. Hall ("Hall" or "Plaintiff") in the above-caption already filed litigation, and in support thereof allege as follows:

### Nature of the Action

1. This is a civil action for false advertising arising under the Lanham Act, 15 U.S.C. §1125(a), and for patent false marking arising under the Patent Laws, 35 U.S.C. §292. The false advertising claim generally arises out of Hall's false representations in April 2009 that his Tote Towel™ product was covered by an issued U.S. Patent, despite the undisputable fact that no such U.S. Patent had issued to Hall by

1

that time. The false patent marking claim generally arises out of Hall's false marking of his product (the "Tote Towel™") as "patent pending" even after the patent – that allegedly covers the product – issued on July 21, 2009.

## Jurisdiction

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

3. Personal jurisdiction over Hall is proper by virtue of, *inter alia*, Hall submitting to jurisdiction of this Court through his filing of the Complaint in the present action.

4. Personal jurisdiction over Hall is also proper because, upon information and belief, Hall regularly transacts business in New York with respect to his Tote Towel™. Upon information and belief, Hall has sold or offered to sell, and continues to sell or offer for sale the falsely marked Tote Towels™ in New York and/or in the stream of commerce with knowledge that they would be sold in New York.

5. Venue is proper in this district under 28 U.S.C. § 1391(c) and 1395(a) because the falsely marked Tote Towels™ were and are offered for sale in this District.

## Parties

6. Upon information and belief, Plaintiff-Counterclaim-defendant, Roger J. Hall ("Hall"), is an individual residing in New Jersey.

7. Counterclaimant, WestPoint Home, Inc., is a Delaware corporation with a principal place of business at 28 East 28th Street, New York, New York ("WPH").

**Procedural Background**

8. Hall filed an Amended Complaint in this Court on July 22, 2010, alleging against WPH (and others) claims of (1) Patent Infringement; (2) Unfair Competition under the Lanham Act; (3) Unfair Competition under the NY General Business Law; and (4) Misappropriation under New York common law.

9. On August 5, 2010, WPH filed a motion to dismiss Hall's claims of unfair competition under the Lanham Act and the NY General Business Law and his claim of misappropriation under New York common law, under Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss").

10. WPH has not yet answered the Amended Complaint because of the pending Motion to Dismiss. While the scope of the answer may change based on the outcome of the Motion to Dismiss, the Motion to Dismiss should not ultimately effect Hall's claim for patent infringement.

11. The Counterclaims alleged herein arise out of much of the same operative facts, transactions and occurrences underlying Hall's patent infringement claim.

**Factual Background**

12. WPH began development on a workout towel with zippered pockets as early as October 2008 (the "Workout Towel").

13. WPH first offered its Workout Towel for sale to potential customers, including Bed Bath & Beyond Inc. ("BB&B"), at the Spring 2009 New York Home Fashions Market Week ("Market Week"), a bi-annual industry trade show, which ran from March 9-13, 2009.

14. WPH began commercial production of its Workout Towel in July 2009, and first sold the Workout Towel to distributors in or about September 2009, with a suggested retail price of $9.99.

15. Counterclaim-defendant, Roger J. Hall, upon information and belief, owns U.S. Patent No. D596,439, entitled "Towel Tote" ("the '439 Patent"), which issued on July 21, 2009. Also upon information and belief, Hall received no correspondence from the U.S. Patent Office regarding the patentability of his pending "Towel Tote" application prior to May 18, 2009.

16. Upon information and belief, Hall offers for sale, sells, and/or distributes a pocketed workout towel under the trademark Tote Towel™ with a suggested retail price of $19.99.

17. According to Paragraph 16 of the Amended Complaint, Hall believes that his '439 Patent covers the Tote Towel™ pocketed workout towels.

18. Upon information and belief, Hall began selling or offering for sale the Tote Towel™ at least as early as December 30, 2008.

19. Beginning in late March 2009 and continuing through April 2009, Hall corresponded with representatives of BB&B "regarding Bed Bath & Beyond potentially carrying the Tote Towel in its stores." (Hall Aff., Exh. A at para. 17).

20. On April 20, 2009, more than three months prior to the issuance of his '439 Patent, and a month before Hall could have even known his patent application would be allowed to issue, Hall sent Mr. Nachemin of BB&B an e-mail falsely representing that "The 'Tote Towel' is covered by my patent." (See ¶16 of Roger J. Hall Affidavit, Court Dk. #41). Further, during a meeting with BB&B in April 2009, Hall

"expressly informed" BB&B that his Tote Towel™ "was protected by my Patent, and manufacturing a similar product would infringe my design." *Id.* at ¶15. These false representations about Mr. Hall's towel were made knowingly and in bad faith in an attempt to persuade BB&B to purchase Mr. Hall's more expensive towel over WPH's less-expensive, competitive towel.

21. Concerned by Hall's representation that his towel was patented, in or about May 2009, BB&B requested assurances from WPH that Hall did not have a patent that could cover WPH's Workout Towel, before it would place an order for WPH's Workout Towel.

22. Hall did not have a patent in April or even May 2009. Nor did Hall even have any indication that a patent might issue until sometime after the Notice of Allowance was mailed on May 18, 2009. In fact, the existence of Mr. Hall's patent application was kept in absolute secrecy by the United States Patent and Trademark Office until the '439 patent issued on July 21, 2009.

23. Hall did not provide any notice (actual or constructive) to WPH or BB&B of the '439 patent before June 2, 2010. On June 2, 2010, BB&B and WPH received a letter that provided the number of the Hall '439 patent to defendants for the first time.

24. Upon information and belief, the '439 patent is the only patent application, U.S. or foreign, that Mr. Hall ever filed and, so with its issuance, Mr. Hall no longer has any pending patent applications.

25. Upon information and belief, Hall sold his Tote Towel™ to a number of customers, both before and after issuance of the '439 Patent, including 250 units sold to West Point Military Academy on or about March 15, 2010. Upon information and belief,

those 250 units were delivered to West Point Military Academy on or about April 15, 2010.

26.     Upon information and belief, all of the Tote Towel™ products sold by Hall after issuance of the '439 Patent, including the 250 Tote Towel™ products delivered to West Point Military Academy on or about April 15, 2010, included a "patent pending" marking, notwithstanding the issuance of the '439 patent on July 21, 2009.  In fact, on information and belief, Hall is still falsely marking the Tote Towel™ with a "patent pending" notice on the label and/or packaging thereof.

## COUNT I
## FEDERAL FALSE ADVERTISING

27.     WPH incorporates the allegations contained in paragraphs 1 through 26 of this Counterclaim as though fully set forth in this paragraph.

28.     During a meeting with BB&B in April 2009, Hall "expressly informed" BB&B that his Tote Towel™ "was protected by my Patent, and manufacturing a similar product would infringe my design." (See ¶15 of Roger J. Hall Affidavit, Court Dk. #41). Further, in an email dated April 20, 2009, Hall wrote to BB&B that "the 'Tote Towel' is covered by my Patent." *Id.* at ¶16.  However, the '439 Patent did not issue until three months later on July 21, 2009.  Therefore, Hall's statements to BB&B in April 2009 that the Tote Towel™ was "patented" were literally false.

29.     Hall intentionally made these false, deceptive, and misleading representations of fact concerning the nature, characteristics, and qualities of his Tote Towel™ pocketed workout towels while advertising his product to BB&B and others, in competition with WPH, in violation of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

30. Hall's false, deceptive and misleading representation that the Tote Towel™ was patented when, in fact, it was not, nearly caused BB&B to decide not to buy WPH's Workout Towel™ in order to avoid potential patent liability.

31. As a result of Hall's deception regarding the nature of Tote Towel™ in April 2009, WPH conducted a patent search for Hall's alleged patent rights. However, because Hall had misrepresented the nature of those rights there was nothing to find. As a result, WPH expended unnecessary legal fees conducting a wild-goose chase to its detriment.

32. Moreover, because Mr. Hall misrepresented that he had already received a patent (as opposed to having a pending patent application) the inability of the search to locate any such patent invented or owned by Roger Hall led WPH to the belief that Hall had made up the whole story about patent rights altogether. As a result of Hall's misrepresentation that he had an issued patent (as opposed to a pending patent application), WPH did not continue to conduct searches for any Hall patents after the Spring of 2009.

33. If Hall had truthfully represented that he had a pending patent application – rather than misrepresenting that he had an issued patent – then WPH would have conducted monthly searches for "Hall" patents and would have found the '439 patent in or around August 2009. Although WPH's current Workout Towel does not infringe the '439 patent, with Hall's patent in hand, WPH could have modified the design of the Workout Towel to provide even greater distance between WPH's Workout Towel and the design disclosed in the '439 Patent, thus making it lawfully impossible for Hall to have

sued BB&B and WPH for patent infringement or otherwise, in turn allowing WPH to avoid the cost of this litigation.

34. Hall's false representations regarding the patented nature of his towels in April 2009 were material, not only because they were likely to influence the purchasing decisions of retailer customers, but also because such false representations deprived WPH of the opportunity to establish an even stronger defense to the patent allegations Hall has made against WPH and BB&B in this litigation, thus, making this litigation less likely. As a direct result, Hall's misrepresentations caused injury to WPH in the form of its attorneys fees in defending itself and BB&B in this litigation, among other injuries.

35. On information and belief, Hall's conduct is willful, deliberate, intentional and done in bad faith.

## COUNT II
## FALSE PATENT MARKING

36. WPH incorporates the allegations contained in paragraphs 1 through 35 of this Counterclaim as though fully set forth in this Count.

37. This is a *qui tam* action brought by WPH on behalf of the public for false patent marking under 35 U.S.C. § 292. Accordingly, WPH, as relator of this claim of the United States, seeks the imposition of a civil fine against Mr. Hall pursuant to 35 U.S.C. § 292(b) of up to $500 for each offense, with one-half of the amount recovered going to the United States and the other half to WPH.

38. On information and belief, Hall was aware on or soon after July 21, 2009 that he had obtained the '439 Patent and, thus, that he had no additional patent applications pending on his Tote Towel™. Yet, with the intent to deceive the public as to

8

the true nature of the scope of his patent protection he continued then and continues now to falsely mark his Tote Towel™ products as "patent pending."

39. Upon information and belief, after July 21, 2009, Hall continued to falsely mark upon, affix to, or use in advertising in connection with his Tote Towel™ pocketed workout towels, the words "patent pending," or words suggesting that a patent application is pending on his Tote Towels™.

40. As of March 15, 2010, nearly eight months after the '439 Patent issued, Hall was still offering the Tote Towel™ pocketed workout towels with the "patent pending" marking as illustrated in the photograph attached hereto as Exhibit B.

41. Mr. Hall's continued false marking of his pocketed workout towels with the words "patent pending," has been done for the purpose of deceiving the public into believing that Mr Hall is still expecting additional patent coverage. This false representation has been done to the detriment of the public and WPH.

### PRAYER FOR RELIEF ON COUNTERCLAIMS

A) A judgment that Hall violated 35 U.S.C. § 292;

B) A judgment fining Hall not more than $500 per offense under 35 U.S.C. § 292, and directing Hall to pay half of the imposed fine to the United States government and the other half to WPH;

C) A judgment that Hall violated 15 U.S.C. §1125(a)(1)(B), and that such violation was willful;

D) A judgment directing Hall to (i) account for and pay to WPH all profits wrongfully derived by Hall by its false and misleading representations and that such damages be trebled in accordance with 15 U.S.C. §1117, (ii) pay to WPH such damages

as have been suffered by WPH and that such damages be trebled in accordance with 15 U.S.C. §1117; and (iii) pay to WPH the costs of this action, together with WPH's reasonable attorney's fees and disbursements in accordance with 15 U.S.C. §1117; and

E) Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: September 14, 2010

By: /s/ Jordan Sigale
Jordan A. Sigale
Jordan A. Sigale (admitted *pro hac vice*)
Adam G. Kelly (admitted *pro hac vice*)
Alison Pollock Schwartz (admitted *pro hac vice*)
LOEB & LOEB LLP
321 North Clark Street, Suite 2300
Chicago, IL  60654
Telephone:  (312) 464-3100
jsigale@loeb.com
akelly@loeb.com

Barry Slotnick
bslotnick@loeb.com
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Telephone: (212) 407-4162

Attorneys for WestPoint Home, Inc.